CHARLES R. PRICE ET AL. V. WM. H. EARDLEY ET AL.

Decided December 18, 1903.

**1.—Limitation of Ten Years—Adverse Possession of Land Supposed to Be Public Domain—Cases Reviewed and Differentiated.**

One who has settled upon land under the homestead donation statute, erroneously believing it to be vacant public domain, can interpose ten years of such occupancy as a bar to the suit of a previous location under a valid certificate, the land remaining unpatented—following Longley v. Warren, 11 Texas Civ. App., 269. Note other cases differentiated.

**2.—Same—Enclosure.**

Under article 3343 of the Revised Statutes ten years adverse possession is a bar without reference to enclosure. Of the 160 acres claimed by appellees in this case but 110 were enclosed. Held that occupation applies to the entire 160 acres. Note the opinion on motion for rehearing reviewing the questions discussed.

Appeal from the District Court of Dimmit. Tried below before Hon. E. A. Stevens.

*Sandford & Douglas* and *Winchester Kelso,* for appellant.

*F. Vandervoort* and *E. R. Lane,* for appellees.

FLY, ASSOCIATE JUSTICE.—Appellants sought to recover 725 acres of land from appellees, but the latter disclaimed as to 640 acres of the land, and the suit resolved itself into a contest as to the title to the land in excess of the 640 acres which was patented to appellant's vendors by the State of Texas. Appellees pleaded not guilty and ten years limitation. In answer to the plea of limitations appellants alleged that until March, 1893, appellees were claiming the land as pre-emptors, believing it to be unappropriated public land. The cause was tried by jury and resulted in a verdict and judgment for appellees.

This suit was filed on May 27, 1902, and the uncontroverted proof shows that appellees went into possession of the land and held it until March, 1893, believing it to be vacant public land.

On June 9, 1888, each of the appellees presented to the surveyor of Dimmit County his application for a homestead donation of eighty acres, being the land in controversy, the applications being supported by affidavits and fully complying with the provisions of articles 4162 and 4163 of the present Revised Statutes, which are identical with articles 3939 and 3940 of the statutes in effect when the applications were made. The land was surveyed on January 8, 1889, and the field notes were filed in the General Land Office as provided in article 4166. Appellees continued in possession of the land until March 21, 1893, when each of them applied for patents in compliance with the requirements of the law. It does not appear that the patents were granted, nor is it shown what action was taken on the applications, although it may be inferred that they were refused on the ground that the land was not vacant land.

The court submitted to the jury the issues as to whether appellees had perfected their title by ten years limitation, and it is the contention of appellants that this was error, because according to the uncontradicted evidence appellees had not made out an adverse holding of the land for ten years, as it appeared that up to March, 1893, they had held it under the belief that it was vacant public land belonging to the State of Texas. There is some conflict of opinion, it seems, among Texas decisions on this subject, and it would doubtless be the duty of this court to certify the question of conflict to the Supreme Court, did it not appear to us that the facts in this case differentiate it from the cases sustaining the views of appellants, as a review of them, we think, will demonstrate.

The first case which we think bears upon the subject is that of Schleicher v. Gatlin, 85 Texas, 370. The facts in that case were that Gatlin moved on the land sued for in 1876, and continued to live thereon until the suit was instituted, erroneously believing until 1879 that the land was vacant public land. He inclosed a part of the land and placed permanent valuable improvements thereon. He made no effort to obtain the land from the State, but for the three years that he was on it had never claimed the land because he thought it belonged to the State. The Commission of Appeals, through Judge Garrett, said: "Under the defendant's own statements his holding was not adverse until 1879, for he believed until then that the land belonged to the State."

All of the cases that have followed the Schleicher-Gatlin case were decided by the Court of Appeals of the First Supreme Judicial District, although in one or two instances, as will hereinafter appear, that court has seemed disposed to distinguish the Schleicher-Gatlin case, if not to question its correctness.

The leading case is cited in Norton v. Collins, 1 Texas Civ. App., 272, but Beaumont Lumber Co. v. Ballard, 25 S. W. Rep., 920, is the first case in which there is an indorsement of the doctrine of that case. In the Ballard case the person claiming the land by limitation had occupied it for ten years, but under the mistaken belief for part of the time that the land was the property of the State and he desired to pre-empt, but did not do so because he was informed that the land was not vacant. The court said: "So long as the plaintiff labored under the erroneous impression that the premises were a part of the public domain, his possession was not an adverse possession."

In the case of Cartwright v. Pipes, 9 Texas Civ. App., 309, 29 S. W. Rep., 690, it appears that Windsor Pipes moved on the land in controversy and erected improvements, and the land was occupied until the suit was instituted, a period of ten years. Windsor Pipes, up to the time of his death in 1888, erroneously thought the land was public land and talked of pre-empting it at some time in the future, but took no steps in that direction. It was contended by the appellant "that the mere facts that a person in possession of land belonging to another is of the belief that it is public land or a part of the public domain of

the State, makes his possession, as a matter of law, that of one claiming in subordination, and not adversely, to the true owner." Among the cases cited in support of the contention was the Schleicher-Gatlin case. The Court of Civil Appeals of the First District, speaking through the same judge who wrote the opinion in the Schleicher-Gatlin case, said: "Our opinion is that the fact that a person in possession of land belonging to another believes that it is public land should go to the jury as any other fact showing intent, in order to determine the character of the possession. While Windsor Pipes believed that the John Stewart survey was a forfeited survey, from which the certificate had been floated, and was public land, the character of his possession was such as to be clearly hostile and adverse to the true owner." In other words the court held that the question as to the adverse holding was one of fact, and not one of law, as was held in the Schleicher-Gatlin case.

The subject came again before the same court in the case of Hartman v. Huntington, 11 Texas Civ. App., 130, 32 S. W. Rep., 562; Blum Land Co. v. Rogers, 11 Texas Civ. App., 184, 32 S. W. Rep., 713, and Flewellen v. Randall, 74 S. W. Rep., 49. In the first named case James Ducett entered upon the land in 1867 and occupied it until his death in 1885, believing all the time that it belonged to the State. The State did not own the land, and the only question was whether or not the possession of Ducett was adverse to the true owner. The court, through Judge Williams, held that it was mainly a question of fact, and decided that the trial judge had not erred in holding that the possession was not adverse to the owner, because there was nothing to indicate that a claim to the land was being set up by Ducett. Stress was laid in the opinion on the fact that Ducett had taken no steps to pre-empt the land.

In the case of Blum Land Co. v. Rogers, 11 Texas Civ. App., 184, 32 S. W. Rep., 713, the defendant had entered into possession of the land believing it to be vacant land and held it for ten years. No effort was made to pre-empt it. The court in this opinion seems to have gone back to the position occupied in the Schleicher-Gatlin case, and held that "where the occupant entered and continued to hold during his occupancy under the erroneous belief that the land was a part of the public domain, it is not a possession adverse to the owner, and that, consequently, such occupant does not acquire title to any part of the land."

In the recent case of Flewellen v. Randall, above cited, the facts were that Randall and Flewellen were neighbors and both erroneously thought the land in controversy was vacant public land, and, at the suggestion of Flewellen, Randall entered into possession of the land and held it for ten years. No effort was made to obtain title from the State. The court reaffirmed the doctrine of Blum Land Co. v. Rogers, referring to the fact that a writ of error had been refused in that case by the Supreme Court.

The foregoing constitute all the cases that sustain the doctrine that time will not be computed in the period of ten years limitation during which the holder of the land thought it public land, and in every one

of them no effort had been made to obtain title to the land from the State.

The first case reported in which the doctrine of Schleicher v. Gatlin was attacked was that of Converse v. Ringer, 6 Texas Civ. App., 51, 24 S. W. Rep., 705, in which the opinion was rendered by Judge Fisher, of the Court of Civil Appeals of the Third District, who was a member of the branch of the Commission of Appeals that rendered the opinion in the criticised case. He vigorously attacked the Schleicher-Gatlin decision, and held that "possession is not required to be adverse to the world, but it is only needful that it be adverse to the true owner, or one claiming adversely to the defendant." The opinion is a strong one and fortified by numerous authorities. The facts in that case indicated that the defendant's vendor held the land, believing it to be vacant land, for ten years, intending to acquire it under the pre-emption laws of the State. The case does not seem to have been carried to the Supreme Court.

In the case of Longley v. Warren, 11 Texas Civ. App., 269, 33 S. W. Rep., 304, decided by the Court of Civil Appeals of the Second District, the decision in the Converse-Ringer case was approved, and a writ of error was refused by the Supreme Court. In the Longley-Warren case the parties in possession of the land, who pleaded ten years limitation, had settled on it and had made their applications and surveys for a homestead donation.

The Longley-Warren case was decided about two months after the case of Blum Land Co. v. Rogers, and must have been approved by the Supreme Court after a writ of error had been refused in the Rogers case, and in the later case it was stated that all the judges composing the Commission of Appeals that rendered the Schleicher-Gatlin opinion had since disapproved of it, and it might be looked upon as overruled. The court reversed the judgment of the lower court, and rendered judgment for appellant for the land, and in refusing the writ of error the Supreme Court must necessarily have agreed with the opinion that in the Converse-Ringer case, the true construction of the ten years statute of limitation was enunciated, and that "the State excepted, the possession was undoubtedly adverse to all the world. The statute only requires it to be adverse to 'another,' which, however broad its meaning, evidently was not intended to apply to the State." The court further said: "The evidence of such adverse possession for more than ten years being undisputed, the court might properly have instructed the jury to return a verdict for appellants." On that ground the judgment was reversed and rendered in favor of appellants. The case is strikingly similar to the one under consideration.

The facts of this case are unlike those in the Schleicher-Gatlin case and those that have followed it, and being almost identical with those in the Longley-Warren case, the decision in which has been approved by the Supreme Court, and that being the last case involving the question to be brought before the court last named, we conclude that it is

the law of the State and should be followed by this court. This is done the more readily because we believe it and the Converse-Ringer opinion enunciate the true doctrine in connection with the statute of limitations of ten years.

Appellees conformed strictly to the law in the endeavor to pre-empt the land, and had it been State land, nothing could have prevented them from obtaining title to it. They were not squatters on land supposed to be public domain, intending to remain only so long as they were permitted by the lawful authorities, but they settled under the law with the intention of remaining and making the land their homesteads. There is but one interpretation to be put upon their acts in settling upon the land, filing their applications for surveys, fencing portions of it, and occupying, using and enjoying it, and applying for patents in the statutory manner. They were holding the land against the world.

It is contended by appellants that appellees should not have recovered the whole of the 160 acres claimed by them because the evidence showed the inclosure of only 110 acres of it.

It is true, as stated by appellants, that appellees had only 110 acres of the land inclosed, being the whole of the 80 acres claimed by W. H. Eardley and 30 acres of the tract claimed by Arthur Eardley, for ten years, the remaining 50 acres not being inclosed until 1898. It also appears from the evidence that no one was in possession of and occupying the survey of which appellants claim the land in controversy was a part, and we are of the opinion that appellees' occupancy would, under articles 3343 and 3344, of the Revised Statutes, old numbers 3194 and 3195, be construed to embrace at least the 160 acres claimed by both of them. Pearson v. Boyd, 62 Texas, 541.

The facts of this case do not bring it within the scope of those cases where a person seeks to hold by limitation a portion of a survey another portion of which is occupied by the owner, and where it is held that the man seeking to establish such title can do so only to so much as he has actually inclosed. Curley v. Parton, 75 Texas, 98; Bracken v. Jones, 63 Texas, 184; Evitts v. Roth, 61 Texas, 81; Claiborne v. Elkins, 79 Texas, 380. This is not a case of extending a boundary so as to take the land of an adjoining landowner, but it is the "open, visible, notorious, distinct and hostile" appropriation of a portion of the land of another for ten years, who does not during the time occupy any portion of the survey. Craig v. Cartwright, 65 Texas, 413; Simpson v. Johnson, 92 Texas, 160.

In the case of Nativel v. Raymond, 59 S. W. Rep., 311, the subject is fully discussed, and it was said: "Under article 3343 of the Revised Statutes, ten years possession is a bar without reference to the existence of inclosure or written memorandum." The statute is indeed so plain that no other construction would have been suggested had it not been for unfortunate expressions in Bracken v. Jones, and perhaps other cases.

Appellees having shown title by limitation by the uncontroverted tes-

timony, errors committed in regard to other issues become immaterial and need not be discussed.

The judgment is affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

FLY, ASSOCIATE JUSTICE.—Appellants in their brief grouped three assignments of error designed to raise the question of the sufficiency of the evidence to sustain the plea of ten years limitation. The first is to the effect that the court erred in submitting the issue at all, the second is that the court erred in refusing to submit the issue in the manner desired by appellants as set forth in a special charge, and the third is that the court erred in refusing a new trial because the evidence showed that until 1893 the appellees were endeavoring to obtain a patent to the land, and consequently could not have been holding it adversely to appellants. The assignments of error were not followed by a proposition, and neither of them is a proposition of law in itself. This court might properly have refused to consider them at all, but saw fit to notice a matter that might have been raised under the assignments, namely, that the limitation of ten years was not raised by the evidence. That question was thoroughly discussed by this court. In the motion for rehearing appellants shift their position and contend that it was a question of fact that should have been determined by the jury, under the law as embodied in a special charge requested by them. The reason for the rule requiring distinct propositions of law under each assignment of error is fully vindicated by this case.

If it be conceded that the circumstances indicate that appellees intended to resign possession of the land if the State did not grant a patent to it, and therefore the time while waiting for a patent should not be considered in the time necessary to make up the period of limitation, still the facts in this case fail to raise that issue. On the other hand the evidence indicates that appellees intended to hold the land whether the State owned it or not.

The true doctrine as to limitation, we think, is stated in the case of Converse v. Ringer, 6 Texas Civ. App., 51, 24 S. W. Rep., 705, as follows: "It is true that limitation will not run when the land is vacated, and title remains in the State, but such is not the case here, and we can perceive no good reason why one in possession of land under the mistaken belief that it is vacant, asserting an exclusive and adverse claim, having the exclusive use and enjoyment of it under a claim that is hostile to the true owner, may not rely upon such possession in order to prescribe under the ten years statute." If the statute required a possession adverse to the claims of everyone there might be some reason for the contention of appellants, but it does not, the clear intention being to require a possession adverse to the true owner. Just as long as appellees were holding the land for the specific purpose of obtaining a patent under the mistaken belief that it belonged to the State of Texas,

34 Civ.—5

they must necessarily have been holding it adversely to everyone else, and it is incomprehensible to this court how the true owners of the land can defeat the adverse holding as to themselves because another's title was recognized. No reasons are attempted to be given in the Schleicher-Gatlin case, or the cases that follow it, for the rule therein announced, and no authorities are cited that tend to support the doctrine of those cases. Prior to the Schleicher-Gatlin case the doctrine was clearly recognized that the adverse possession contemplated by the statute was one against the owner of the land. In the case of Gillespie v. Jones, 26 Texas, 343, it was said: "The legal effect and extent of an adverse possession depends of course upon the character of title which it is sought to be sustained. But in presumption of law, an actual possession must be regarded as adverse to all other titles or claims than that of the possessor, or such as have been recognized by him. And whenever a party permits such possession to be maintained, he does so at his peril."

If our view of the law is correct a verdict for appellees was bound to be rendered on the evidence as to limitations, and it is absolutely immaterial as to the errors that may have been committed as to other matters.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.